493 So.2d 1310 (1986)
Linda C. DEVEREAUX
v.
John C. DEVEREAUX.
No. 55815.
Supreme Court of Mississippi.
September 10, 1986.
*1311 Steven E. Farese, Farese, Farese & Farese, Ashland, for appellant.
John T. Lamar, Jr., Lamar & Lamar, Senatobia, for appellee.
Before HAWKINS, P.J., and PRATHER and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
The Chancery Court of Tate County granted a divorce to John C. Devereaux on grounds of habitual cruel and inhuman treatment and denied relief on those same grounds to Linda C. Devereaux. From that judgment both parties appeal.

I.

WAS IT MANIFEST ERROR TO DENY DIVORCE TO LINDA DEVEREAUX AND GRANT DIVORCE TO JOHN DEVEREAUX?
In summary the testimony supporting Linda's charge of habitual cruel and inhuman *1312 treatment against John was supported by her testimony in that John hit her 15 or 20 times during the course of their marriage, cursed her on several occasions, frequently questioned her fidelity to him, and occasionally stayed out all night.
This testimony was supported by Cheryl Devereaux, daughter of the parties, when she testified that her father was always the main instigator of the problems between her parents. Cheryl has seen her father hit her mother twice but has never seen her mother strike her father. Cheryl testified that she had heard her father vilify her mother on several occasions.
Wesley Devereaux, the son of the parties, testified that he had never seen his father hit his mother but he had seen his mother after she had been struck. He further testified that he had heard his father vilify his mother on several occasions. Wesley said that his mother never started any arguments between the parties.
To contradict this testimony John Devereaux himself testified that he only hit Linda four times and only once with his fist in order to stop her from hitting him. He complained that Linda cursed him on several occasions, their sex life had decreased in frequency, and since their reconciliation Linda had been cold toward him. In further support of his grounds for divorce John testified that he was suspicious of Linda's relationship with one H.H. House and that he had in fact on April 20, 1982, found Linda and H.H. House engaged in an act of adultery.
We will not reverse the chancellor's finding of fact on contradictory testimony unless it is manifestly wrong. Voss v. Stewart, 420 So.2d 761, 765 (Miss. 1982); and legions of other cases and citations. The converse of that truism is that we will reverse a chancellor on his finding of fact when upon the record it is manifestly wrong. In order for the chancellor to deny Linda Devereaux a divorce from John Devereaux on the grounds of habitual cruel and inhuman treatment, he would have to find that the testimony as to those grounds by Linda Devereaux, Cheryl Devereaux and Wesley Devereaux was incredible and unbelievable. Nothing in the record would substantiate that finding by the chancellor. We are of the opinion that on the evidence offered by the appellant she was entitled to a divorce on the grounds of habitual cruel and inhuman treatment and accordingly this cause will be reversed and remanded to the Chancery Court of Tate County for the entry of a judgment of divorce to Linda Devereaux on the ground of habitual cruel and inhuman treatment.
Applying the same test to the testimony of John Devereaux which the chancellor found more believeable and upon which he granted a divorce to John Devereaux, we find that excluding the testimony concerning the alleged adultery on April 20, 1982, that the testimony offered by John Devereaux is insufficient to support an award of divorce to him on the grounds of habitual cruel and inhuman treatment. See Fournet v. Fournet, 481 So.2d 326 (Miss. 1985); Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985); Stennis v. Stennis, 464 So.2d 1161 (Miss. 1985); Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984); and Marble v. Marble, 457 So.2d 1342 (Miss. 1984).
The chancellor found that Linda Devereaux and H.H. House had committed adultery on April 20, 1982, and while he did not grant a divorce to John Devereaux on those grounds, he did consider the adultery when entering the decree of habitual cruel and inhuman treatment.
For the reasons set forth below the chancellor was manifestly in error when he found that Linda Devereaux had committed adultery on April 20, 1982.
John and Linda married on September 6, 1963. On March 25, 1982, Linda was granted a divorce from John on the grounds of cruel and inhuman treatment and irreconciliable differences.
This divorce was revoked on July 7, 1982, under a joint application of John and Linda Devereaux by the authority of Mississippi Code Annotated, § 93-5-31 (1972).
*1313 Obviously this reconciliation attempt failed and on June 2, 1983, Linda filed her complaint for divorce which was met by the answer and cross-claim by John. The trial of this case began on January 4, 1984, and was continued and concluded in March of 1984.
Based primarily on the testimony of Mr. Devereaux that between the time of the divorce on March 25, 1982, and the revocation of that divorce on July 7, 1982, more particularly on April 20, 1982, that he, John Devereaux, caught Linda Devereaux in a very compromising position with Mr. H.H. House. He did not catch them in an act of adultery but in a compromising position. The question became in the mind of the chancellor then whether or not a person may commit adultery during the period of time after the entry of a divorce decree and prior to a revocation of that divorce decree.
The chancellor determined that the legal effect of the revocation granted under MCA, § 93-5-31 (1972), on July 7, 1982, was to nullify the decree of divorce granted under the authority of MCA, § 93-5-27 (1972), on March 25, 1982.
The chancellor then found that whatever John Devereaux had seen on April 20, 1982, was sufficient to be clear and convincing evidence of adultery and determined that Linda Devereaux and H.H. House had committed adultery. The chancellor's next step was to determine that John Devereaux when he entered into the joint petition to revoke the divorce condoned the adultery. In these findings the chancellor was manifestly in error.
Mississippi Code Annotated § 93-5-27 (1972), states, "In all cases of divorce from the bonds of matrimony, the marital rights shall cease with the decree." This statute means what it says  namely, that the divorce is absolute. With the entry of the decree the marital rights of the parties as related to one another cease and the status of the parties is that of unmarried persons who may contract another marriage unless prohibited by the decree. Thus on April 20, 1982, John Devereaux was a single person and Linda Devereaux was a single person and John Devereaux had no claim to an exclusive marital relationship with Linda Devereaux. Linda Devereaux, therefore, could not commit adultery as an offense against her marital status with John Devereaux.
Mississippi Code Annotated, § 93-5-31 (1972), reads:
The decree of divorce from the bonds of matrimony may be revoked at any time by the court which granted it, under such regulations and restrictions as it may deem proper to impose, upon the joint application of the parties, and upon the production of satisfactory evidence of their reconciliation.
Nothing in this statute authorizes the chancellor to find that this statute revokes the prior decree to such an extent as though the parties were never divorced so that any act by either of the parties in the interim between the divorce decree and the revocation of that decree could be construed by the law to be an offense against their marital status. The purpose of the statute is to encourage the reconciliation of broken marriages, not to place the parties in the position of unknowingly giving offense to the marital status once it has been restored.
In Owen v. Gerity, 422 So.2d 284 (Miss. 1982), this Court said:
... adultery cannot be committed by an unmarried woman with an unmarried man, the gist of the offense being voluntary sexual intercourse of a married person with a person other than the offender's spouse. Because the bonds of matrimony in cases such as this one have been severed, the offending spouse's sexual misconduct cannot be categorized as anything other than fornication.
422 So.2d at 287.
We therefore find that there was insufficient evidence upon which the chancellor could grant John Devereaux a divorce on the grounds of cruel and inhuman treatment and more than sufficient evidence upon which the court could have and should have granted Linda Devereaux a *1314 divorce on the grounds of cruel and inhuman treatment. We, therefore, reverse and remand this cause to the chancellor for entry of a decree not inconsistent with this finding.

II.

DID THE LOWER COURT ERR AND ABUSE ITS DISCRETION IN ORDERING THE ARREST OF LINDA DEVEREAUX?
It is unnecessary to address this assignment of error as it has been disposed of by our finding under assignment No. I above.

CROSS-APPEAL

I.

WAS THE CHANCELLOR IN ERROR WHEN HE FAILED TO AWARD ATTORNEYS FEES TO JOHN DEVEREAUX?
The chancellor made a complete and thorough division of the property between these parties. In so doing he determined that John Devereaux had a sufficient estate to pay for his own legal representation.
We cannot find that that determination by the chancellor was manifestly wrong. The matter of determining attorneys fees in divorce cases is largely entrusted to the sound discretion of the chancellor. In this case he did not abuse his discretion and under the authority of McKee v. McKee, 418 So.2d 764 (Miss. 1982), and Walters v. Walters, 383 So.2d 827 (Miss. 1980), we affirm the chancellor's action in denying attorneys fees to John Devereaux.

II.

DID THE CHANCELLOR ERR IN FAILING TO AWARD JOHN DEVEREAUX HIS EQUITABLE INTEREST IN THE REAL PROPERTY LOCATED IN THE STATE OF TENNESSEE?
No authority is cited in support of this assignment on cross-appeal by John Devereaux and under the authority of Ramseur v. State, 368 So.2d 842 (Miss. 1979), it is not necessary that this Court address this assignment.
We point out that on this record that at the time of their first divorce the Tennessee property contained 28 and one-quarter acres, more or less, placed in Linda Devereaux' name. Nothing in the revocation of that decree did anything to return that property to John Devereaux. Under the authority of Miller v. Miller, 298 So.2d 704 (Miss. 1974), the chancellor did not abuse his discretion nor did he have the authority to award any of the Tennessee property to John Devereaux.

III.

DID THE CHANCELLOR ERR IN FAILING TO AWARD JOHN DEVEREAUX HIS EQUITABLE INTEREST IN ALL CASH MONIES, SAVINGS ACCOUNTS AND CERTIFICATES OF DEPOSIT TITLED IN LINDA DEVEREAUX NAME?
The record shows that when the parties first separated in October of 1981 they had over $2,000.00 in a savings account and in November of 1981, John Devereaux took this money. They also had a $10,000.00 certificate of deposit in both their names which was purchased in October of 1981. When they received their first divorce both of them agreed to put this certificate of deposit in Linda Devereaux' name. The chancellor found that Linda Devereaux was to be awarded the $10,000.00 certificate of deposit. It appears from the testimony that on October 10, 1981, it was Linda Devereaux who put up the $10,000.00 for this certificate of deposit and she put her name and her husband's name on it. There is no merit to this assignment of error.
We therefore reverse and remand this cause to the chancellor with instructions that he grant a divorce to Linda Devereaux from John Devereaux on the grounds of *1315 habitual cruel and inhuman treatment. The chancellor's findings on this case are affirmed as to attorneys fees and the division of property between these parties.
REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ., concur.