614 So.2d 394 (1993)
Patrysha Tewhill Platz SMITH
v.
Sydney Allen SMITH.
No. 90-CA-1017.
Supreme Court of Mississippi.
February 18, 1993.
*395 Walter W. Teel, Meadows Riley Koennen & Teel, Gulfport, for appellant.
G. Eric Geiss and J.N. Randall, Jr., Gulfport, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
McRAE, Justice, for the Court:
This appeal arises from a September 14, 1990, judgment of the Chancery Court for the First Judicial District of Harrison County, granting Dr. Sydney Allen Smith a divorce from Patrysha Tewhill Smith on the statutory ground of cruel and inhuman treatment and awarding him custody of their minor child. We affirm the Chancellor's decisions granting the divorce, awarding custody of the child to his father and ordering the appellant to pay child support, providing her only a token settlement of $12,000.00 and denying her request for attorneys' fees.

I.
Patrysha Tewhill Smith ("Patte") and Sydney Allen Smith ("Syd"), a neurologist, were married in Gulfport, Mississippi, on September 12, 1987. This was the second marriage for both parties. Their son, Zachary, was born on June 1, 1988. Patte also had a daughter, Jessica Platz, from her previous marriage.
Syd and Patte's marriage seemed doomed from the start. While honeymooning in the mountains of Colorado and Wyoming, Patte revealed to Sydney her continuing "fond thoughts" about her first husband, Bill Platz, who lived in Mitchell, South Dakota. She also demonstrated a profound, perhaps irrational, concern for the safety and welfare of Jessica, who had been left in Mississippi with Syd's sister, Dorothy, a certified psychiatric social worker. The honeymoon came to an abrupt end when Syd fell off his horse on a mountain trail, fracturing a rib and puncturing a lung.
Patte left her injured husband in Colorado and flew back to Gulfport to check on her daughter. She and Jessica later met Syd in Amarillo, Texas. While in Texas, Patte, for the first time, informed Syd that she was pregnant with his child. One month later, Patte traveled alone to Mitchell, South Dakota, to resolve her feelings for her first husband.
From the beginning, Patte expressed her desire to abort Syd's unborn child. Her reasons seemed to swing from her unresolved feelings about her former husband to her repugnance over the thought of having, in the event of another divorce, one child visiting with one father and the other child visiting with another, thereby making her a poor prospect for a third marriage. She worried also that a second child would create an additional financial burden and inconvenience for her.
The unborn child became a pawn in the marriage, with Patte threatening to abort the pregnancy if Syd did not meet her demands. When she was five months pregnant, Patte made an appointment to have an abortion at a clinic in New Orleans. On February 4, 1988, the day before her *396 appointment, Patte wrote in a letter to Syd: "If you will agree to this in the event we divorce I can see fit to keep the child as I'll be able to raise both it and Jessi. You aren't looking at the logistics of the thing."
Patte apparently relented and John Zachary Smith was born on June 1, 1988. The new baby was frequently ill, suffering from a variety of respiratory ailments.
During the next year, the Smiths argued constantly over money, horses, and Jessica's discipline. Syd and Patte had more counselors than most people have friends. When it became clear that professional counseling was fruitless, they separated for a final time on or about April 24, 1989.
Two days later, on April 26, 1989, Syd filed a complaint for divorce and other relief, including physical custody of Zachary. The complaint alleged as grounds for divorce Patte's habitual cruel and inhuman treatment and, alternatively, irreconcilable differences. On May 8, 1989, Patte answered and filed her counterclaim for separate maintenance or, alternatively, for divorce on the ground of habitual cruel and inhuman treatment or on the ground of irreconcilable differences.
On May 18, 1989, the lower court issued an order awarding temporary custody of Zachary to Patte, granting visitation rights to Syd, granting use and possession of the family domicile to Patte and awarding her temporary child support in the amount of $2,100 per month.
The chancellor issued a fifteen page "Findings of Fact and Conclusions." On September 14, 1990, a judgment was entered granting Syd a divorce from Patte on the statutory ground of habitual cruel and inhuman treatment; awarding Syd custody of Zachary, the couple's minor child; ordering Patte to pay to Syd $224.00 a month for child support; awarding Syd the marital home; denying Patte's claim for attorney's fees; and taxing her with costs.
Patte was granted visitation rights, ownership and use of her own personal effects and those belonging to Jessica; the Jeep Cherokee which Patte operated during the course of her marriage to Syd; exclusive ownership of the horse, Ozy; $1,000 per month for twelve (12) months as a settlement of any and all property and other interests existing between the parties; and moving costs attendant to her first relocation to a residence of her choice. The remaining relief she sought was denied.

II.
Patte first contends that the chancellor erred in granting Syd a divorce on the grounds of cruel and inhuman treatment, asserting that his proof was insufficient. While habitual cruel and inhuman treatment may be established by a preponderance of the credible evidence, as opposed to clear and convincing evidence, the charge "means something more than unkindness or rudeness or mere incompatibility or want of affection." Wires v. Wires, 297 So.2d 900, 902 (Miss. 1974). "In order for a divorce to be granted on the ground of habitual cruel and inhuman treatment, there must be proof of systematic and continuous behavior on the part of the offending spouse which goes beyond mere incompatibility." Parker v. Parker, 519 So.2d 1232, 1234 (Miss. 1988).
We articulated the applicable standard for a divorce sought on the ground of habitual cruel and inhuman treatment in Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989), stating:
In years gone by, this Court consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may reasonably be said a permanent condition.
See also Stennis v. Stennis, 464 So.2d 1161 (Miss. 1985); Gallaspy v. Gallaspy, 459 So.2d 283 (Miss. 1984); Marble v. Marble, 457 So.2d 1342 (Miss. 1984).
Finding that the chancellor's extensive Findings of Fact are well supported by the evidence in the record, we defer to his *397 conclusion that Patte's behavior toward Syd was more than mere incompatibility and was sufficient to warrant the granting of a divorce on the grounds of cruel and inhuman treatment.

III.
Likewise, we disagree with Patte's contention that the chancellor erred in awarding custody of the couple's minor son, Zachary, to Syd. In Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983), we reaffirmed "the rule that the polestar consideration in child custody cases is the best interest and welfare of the child." We instructed chancellors, when making custody decisions, to consider the age of the child, the health and sex of the child, the continuity of care prior to the separation, parenting skills and willingness to provide primary child care, employment and responsibilities of employment, physical and mental health and age of the parents, emotional ties of parent and child, moral fitness of parents, the home, school and community record of the child, the preference of the child, stability of the home environment and employment of each parent, and other factors relevant to the parent-child relationship. Albright, 437 So.2d at 1005. No one individual factor should carry any greater weight than the other. Id. Finding that the chancellor properly considered and applied the Albright factors, we cannot say he was manifestly wrong in finding that Zachary's best interests would be served by being placed in his father's custody.
Likewise, we find that the chancellor did not err in ordering Patte to pay child support in the amount of $224.00 per month. Patte asserts that the award exceeds the statutory guideline for the support of one child of fourteen percent of the obligated parent, Patte's gross income. While the statutory guidelines are relevant and may be considered by a chancellor as an aid in determining child support awards, we have held that the specific need or support required is to be determined by a chancellor "at a time real, on a scene certain, and with a knowledge special to the actual circumstances and to the individual child or children." Thurman v. Thurman, 559 So.2d 1014, 1018 (Miss. 1990). See also Jellenc v. Jellenc, 567 So.2d 847 (Miss. 1990).
Our review of the record, however, persuades us that Patte is quite able to support herself, as well as to pay child support. Accordingly, we find that the chancellor did not abuse his discretion is so obligating her.

IV.
Patte further complains that she was entitled to either lump-sum or periodic alimony because of the disparity in the couple's separate estates. We have stated that "[w]hether to award alimony, and the amount to be awarded, are largely within the discretion of the chancellor." Cherry v. Cherry, 593 So.2d 13, 19 (Miss. 1991); Brendel v. Brendel, 566 So.2d 1269 (Miss. 1990). It is, however, a general rule that alimony will not be allowed a wife when the husband is granted a divorce because of her fault. Retzer v. Retzer, 578 So.2d 580, 592 (Miss. 1990); Beacham v. Beacham, 383 So.2d 146, 147 (Miss. 1980); Russell v. Russell, 241 So.2d 366, 367 (Miss. 1970).
The rule is a sound one and is based on the proposition that a husband is entitled to have his wife receive her support in his home while she is discharging the duties of a wife as imposed under the marriage contract.
Bunkley & Morse, Amis on Divorce and Separation in Mississippi, § 6.04 at 184 (1957). We have made exceptions to this rule in those cases "where the marriage has been of long duration, the husband is able to pay alimony in some amount, and the wife has no means of livelihood." Retzer, 578 So.2d at 593.
The chancellor clearly found Patte to be at fault for the failure of this marriage. Although the marriage lasted only three years and Patte, who had a college degree in landscape architecture and had worked as a graphic artist, had a demonstrated ability to support herself, the chancellor awarded her $12,000.00 payable in $1,000.00 increments over a twelve month period in "lieu of alimony." While we find *398 that this is, for all practical purposes, an award of lump-sum alimony, we cannot say that the chancellor abused his discretion in so limiting the amount.
As with alimony, the determination of attorney's fees is largely within the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704 (Miss. 1990); Devereaux v. Devereaux, 493 So.2d 1310 (Miss. 1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss. 1985). We are "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees and of the amount of [any] award." Geiger v. Geiger, 530 So.2d 185, 187 (Miss. 1988).
We follow the general rule that where "a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Martin v. Martin, supra, 566 So.2d at 704; Carpenter v. Carpenter, 519 So.2d 891 (Miss. 1988); Harrell v. Harrell, 231 So.2d 793 (Miss. 1970). In Cheatham v. Cheatham, 537 So.2d 435 (Miss. 1988), we held that the chancellor abused his discretion in awarding attorney's fees where there was insufficient evidence in the record to establish the wife's inability to pay. Patte is college educated, physically capable of employment, and owns her own business. Nothing in the record indicates an inability to pay her own attorney's fees. Indeed, she has paid nearly one-half of those fees already. Accordingly, we find that the chancellor did not abuse his discretion in denying Patte's request for attorney's fees.

V.
Having reviewed the record, we are of the opinion that the evidence supports the chancellor's findings and conclusions. Accordingly, we affirm the final judgment of the Chancery Court.
AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.