788 So.2d 862 (2001)
Bob HANEY, Appellant
v.
Pat HANEY, Appellee.
No. 1999-CA-02078-COA.
Court of Appeals of Mississippi.
June 26, 2001.
*863 Merrida Coxwell, Jackson, Attorney for Appellant.
*864 Robert M. Carter, New Albany, Attorney for Appellee.
Before KING, P.J., PAYNE, and MYERS, JJ.
MYERS, J., for the Court:
¶ 1. The Union County Chancery Court granted a divorce to Bob and Pat Haney on the ground of irreconcilable differences. Bob now appeals the decision of the trial court, challenging the award of $104,974.77 in alimony and attorney fees. Finding error, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
¶ 2. Bob and Pat Haney were married on February 11, 1996. At the time of marriage, Pat was employed with Forms and Supplies in Memphis, Tennessee, and Bob was employed with Ameron. Shortly after the couple was married, Pat was diagnosed with several ailments, including an inner ear infection, digestive track problems, fibromyalgia, migraine headaches, and others. These various conditions resulted in thousands of dollars in health care costs and forced Pat to quit her job. Each maintained separate homes throughout the course of their marriage. The couple separated on or about July 7, 1997. No children were born from the marriage.
¶ 3. A temporary hearing was begun on November 10, 1997, and was reconvened and concluded on December 15, 1997. The chancellor issued an opinion and temporary judgment on January 8, 1998, finding that both parties had substantial estates which they possessed prior to the marriage, but nevertheless ordering Bob to pay Pat's car note in the amount of $873.67 per month and temporary support of $850 per month.
¶ 4. A second hearing was held on September 29,1999. The chancellor subsequently issued an opinion and judgment in which he found Pat to have non-marital assets totaling $115,930 and Bob to have non-marital assets totaling $482,464. The chancellor further found that Pat's monthly income was $1,801 and that her monthly expenses were $3,350. Bob's net monthly income was found to be $7,539 but no finding was made as to Bob's monthly expenses.
¶ 5. The judgment of the chancellor also noted that at the time of the temporary hearing in 1997, Pat's separate investments totaled $65,000, but that at the time of judgment those investments had been reduced to $42,000. Bob's separate investments at the time of the temporary hearing amounted to $396,964, but they grew to $618,214 by the time of judgment. A key factor in the chancellor's decision was the fact that Bob had canceled Pat's medical insurance coverage without her knowledge, and that as a result, Pat was forced to pay some $19,500 in medical bills from her own funds.
¶ 6. Those assets classified as marital assets in the trial court's opinion and judgment are the 1996 Volvo, valued at $14,250, $5,898.45 in checking accounts held in Pat's name, $8,848 in checking accounts held in Bob's name only, and the $221,250 growth on Bob's separate investments between the time of the temporary hearing and the time of judgment. The chancellor granted Pat the exclusive use and possession of the Volvo and ordered Bob to pay Pat "lump sum alimony" in the amount of $104,974.77, which he found to be "one half of the marital assets" less the value of the Volvo and the $5,898.45 which Pat held in her separate checking accounts.

STANDARD OF REVIEW
¶ 7. Our standard of review employed in domestic relations cases is well-settled. We recognize chancellors as having broad *865 discretion, and we will not disturb a chancellor's findings unless the court's actions were manifestly wrong, constituted an abuse of discretion, or represent the application of an erroneous legal standard. Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997).

DISCUSSION

I. CLASSIFICATION OF GROWTH OF BOB HANEY'S NON-MARITAL ASSETS AS MARITAL PROPERTY
¶ 8. In its opinion and judgment, the chancellor found that Bob Haney held as non-marital assets "$618,214.00 in investments of which $221,250.00 is the result of growth since his last financial statement presented to the Court at the temporary hearing for a net non-marital asset investment of $396,964.00." Bob argues that the trial court erred in classifying the growth of his non-marital investments as a marital asset. Pat concedes this point but argues that it is inconsequential because the chancellor did not make an equitable distribution of the property. Rather, Pat asserts, the chancellor made an award of lump sum alimony. We agree. There is no need to discuss the growth of the invested non-marital assets because the chancellor handled the disparity in financial situations with an award of lump sum alimony. Therefore, we need only determine whether the amount awarded to Pat was equitable and was calculated pursuant to the correct legal standard.

II. AWARD TO PAT OF HALF OF THE GROWTH OF BOB'S NON-MARITAL ASSETS
¶ 9. In its opinion and judgment, the trial court considered the factors set forth by the Mississippi Supreme Court for the distribution of marital property. Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994). However, as stated above, the separate investments of Bob were not marital property and were therefore not subject to equitable distribution. Therefore, an award to Pat from those assets could only come in the form of lump sum alimony.
¶ 10. The Mississippi Supreme Court has established certain factors to be considered by a chancellor in awarding lump sum alimony. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). Those factors are: 1) substantial contribution to the accumulation of total wealth of the paying spouse either by quitting a job to become a housewife, or by assisting in the paying spouse's business; 2) length of the marriage; 3) separate income of the recipient spouse as compared to that of the paying spouse; and 4) financial security of the recipient spouse absent the lump sum payment. Id. The court went on to say the single most important factor is the disparity of the separate estates. Id. The chancellor in the case at bar made no reference to these factors in his opinion and judgment.
¶ 11. Pat testified that she helped Bob out with his business for a three or four month period during the marriage by making phone calls, typing, and handling faxes. The record reflects that the parties were married for approximately fifteen months. It is also apparent that Bob's monthly income is far greater than Pat's. The chancellor's finding that Pat's monthly expenses were greatly exceeding her monthly income is an indication that Pat would likely be financially insecure without a lump sum alimony payment. However, it appears as if the chancellor failed to consider Pat's interest in Barber Printing in reaching his decision. The chancellor did not illustrate his analysis of this marriage under the Cheatham factors. Thus, *866 we are left with no guidance by which to review his decision. Therefore, we reverse and remand for specific findings of fact and conclusions of law on this issue based upon the above mentioned Cheatham factors. We note that the chancellor is authorized to require one ex-spouse to make medical insurance premium payments for the other ex-spouse. Driste v. Driste, 738 So.2d 763, 766 (Miss.Ct.App.1998). Such action would likely be appropriate under the circumstances of this case.

III. AWARD OF ATTORNEY FEES TO PAT HANEY
¶ 12. "[T]he determination of attorney's fees is largely within the sound discretion of the chancellor." Smith v. Smith, 614 So.2d 394, 398 (Miss.1993) (citing Martin v. Martin, 566 So.2d 704 (Miss. 1990); Devereaux v. Devereaux, 493 So.2d 1310 (Miss.1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss.1985)). Furthermore, we are "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney fees." Geiger v. Geiger, 530 So.2d 185, 187 (Miss.1988). Mississippi maintains a "general rule that where `a party is financially able to pay her attorney, an award of attorney's fees is not appropriate.'" Id. (quoting Martin v. Martin, 566 So.2d at 704; Carpenter v. Carpenter, 519 So.2d 891 (Miss.1988); Harrell v. Harrell, 231 So.2d 793 (Miss. 1970)).
¶ 13. The chancellor in the case at bar found that Pat's monthly income totaled $1,801, while her monthly expenses totaled $3,350. The chancellor further found that Pat's financial statements indicated that she was being required to invade her investments to meet her monthly expenses. However, as stated above, the chancellor failed to include in his analysis Pat's interest in the printing business. Without this information, we are unable to determine whether Pat was financially able to pay her attorney. We therefore reverse and remand for specific findings of fact and conclusions of law on this issue as well.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF UNION COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., AND BRIDGES, J. CONCUR. IRVING, J., CONCURS IN RESULT ONLY. CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PAYNE AND THOMAS, JJ. McMILLIN, C.J., AND LEE, J., NOT PARTICIPATING.
CHANDLER, J., dissenting:
¶ 15. I respectfully dissent. I agree with the majority that the chancellor's incorrect classification of Bob's investments does not, in and of itself, warrant reversal. I also agree with the majority's statement that: "[A]n award to Pat from those [separate investment] assets could only come in the form of lump sum alimony." I further agree that: "[T]he chancellor's finding that Pat's monthly expenses were greatly exceeding her monthly income is an indication that Pat would likely be financially insecure without a lump sum alimony payment." My disagreement with the majority stems from its finding that remand was necessary because the chancellor's opinion gave no guidance, based upon the factors enumerated in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988), by which this Court could review an award of lump sum alimony. I further disagree with the majority's remand for specific findings of fact and conclusions of law regarding attorney fees.
*867 ¶ 16. A thorough reading of the chancellor's opinion leads me to conclude that the chancellor considered the Cheatham factors in determining that Pat was entitled to lump sum alimony. While the chancellor initially characterized Bob's separate investment property as marital property, the chancellor did not subject Bob's investment property to equitable distribution. Instead, the chancellor awarded Pat a portion of the investment property as lump sum alimony, an act which the majority agrees may have been appropriate in light of the disparity of Pat's income and expenses. While the chancellor stated that he considered the Ferguson factors to determine the equitable distribution of the marital property, he actually considered the Cheatham factors and awarded Pat lump sum alimony from Bob's investment income. Consider the following language from the chancellor's opinion:
In attempting to resolve an equitable distribution of the marital assets under the guidelines of the [sic] Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994), the most significant factors to be considered are the following: 1) That Bob Haney made by far the greater contribution to the acquisition of the marital assets; 2)[t]hat Pat Haney has the far greater need for financial security considering the proof presented of her severe medical disability and resulting lack of ability to earn substantial income and her need for medical insurance coverage; 3)[t]he extreme short duration of the marriage...; and 4) and the vast disparity in current income of the parties and concurrent investment holdings.
¶ 17. These factors are the factors to be considered under Cheatham in determining lump sum alimony. Cheatham, 537 So.2d at 438.
¶ 18. After summarizing the evidence, the chancellor required Bob to pay Pat "out of his investment account as lump sum alimony one half of the marital assets..." less the value of Pat's automobile and personal checking account. (Emphasis added). While he mistakenly referred to the investment income as a marital asset, the chancellor employed the Cheatham analysis and awarded Pat the amount as lump sum alimony. Since the chancellor considered the appropriate factors, our review should be limited to whether the record substantially supports the amount of lump sum alimony the chancellor awarded.
¶ 19. Both the supreme court and this Court have amended the labels placed on monetary awards in divorce cases where it is obvious that the chancellor mislabeled the award. See Devore v. Devore, 725 So.2d 193 (Miss.1998); East v. East, 775 So.2d 741 (Miss.Ct.App.2000). In East, this Court reviewed the chancellor's award to the wife of the husband's equity in the marital home. The chancellor characterized the award as lump sum alimony. We affirmed the chancellor's award, but noted that the chancellor's characterization of the award was incorrect; the award was actually an equitable distribution of the marital estate. We stated that: "[T]he chancellor's label of the home equity as lump sum alimony was incorrect, and we now correct this error by affixing the correct labelequitable distribution of the estate." Id. at (¶ 9). We also noted that: "[T]hough he failed to label his findings as such, the chancellor did conduct a Ferguson analysis...." Id.
¶ 20. Since we affirmed the chancellor's decision in East, absent a specific recitation of Ferguson, where it was apparent that the chancellor conducted the proper analysis for equitable distribution of marital property, I believe we should affirm in this case where it is apparent that the chancellor conducted the proper analysis in awarding lump sum alimony.
*868 ¶ 21. In the case sub judice, the chancellor seemed most concerned with the vast disparity between Bob's and Pat's incomes and Pat's far greater need for financial security concerning her medical disability and her need for medical insurance coverage. "The single most important factor undoubtedly is the disparity of the separate estates." Cheatham, 537 So.2d at 438. Given the great disparity between the incomes of these parties, and given that part of the reason Pat was in such dire financial straights was because of Bob's failure to tell her that he did not include her on his new medical insurance policy, I do not believe the chancellor manifestly erred in awarding Pat lump sum alimony.
¶ 22. I would also affirm the chancellor's award of attorney fees. Bob's plea on appeal for a reversal of the attorney fee award constituted three sentences in which he recited no law. I do not believe that he demonstrated that the chancellor, who as the majority acknowledges has considerable discretion in awarding attorney fees in divorce cases, abused his discretion. I would affirm.
PAYNE AND THOMAS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.