881 So.2d 862 (2003)
Bob HANEY, Appellant,
v.
Pat (Robertson) HANEY, Appellee.
Bob Haney, Appellant,
v.
Pat Haney, Appellee.
Nos. 2002-CA-00244-COA, 1999-CA-02078-COA.
Court of Appeals of Mississippi.
November 25, 2003.
Rehearing Denied March 9, 2004.
*863 Timothy E. Ervin, Merrida Coxwell, Jackson, attorneys for appellant.
Robert M. Carter, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. The dissolution of the marriage of Bob and Pat Haney returns once again to this court. Here, we consider Bob Haney's appeal of the chancellor's revised opinion and judgment.
¶ 2. In Haney v. Haney, 788 So.2d 862, 866 (¶ 11) (Miss.Ct.App.2001), this Court reversed and remanded this case on two grounds. First, we reversed the case because the chancellor failed to make specific findings of fact and conclusions of law to support the award of lump sum alimony to Pat, based upon factors established in Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). We remanded the case for the chancellor to "illustrate his analysis of the marriage" under these factors. Haney, 788 So.2d at 865-66(¶ 11). Second, we reversed and remanded the case for the chancellor to determine if Pat Haney was eligible to receive an award of attorney's fees. Id. at (¶ 13). We are of the opinion that the chancellor is again in error; therefore, we reverse and remand for further proceedings consistent with this opinion.

FACTS
¶ 3. The facts relevant to this appeal are substantially the same as in the original appeal, we recite those facts with a few additional facts.
Bob and Pat Haney were married on February 11, 1996. At the time of marriage, Pat was employed with Forms and Supplies in Memphis, Tennessee, and Bob was employed with Ameron. Shortly after the couple were married, Pat was diagnosed with several ailments, including an inner ear infection, digestive track problems, fibromyalgia, migraine headaches, and others. These various conditions resulted in thousands of dollars in health care costs and forced Pat to quit her job. Each maintained separate homes throughout the course of their marriage. The couple separated on or about July 7, 1997. No children were born from the marriage.
A temporary hearing was convened on November 10, 1997, and was reconvened and concluded on December 15, 1997. The chancellor issued an opinion and temporary judgment on January 8, 1998, finding that both parties had substantial estates which they possessed prior to the marriage, but nevertheless ordering Bob to pay Pat's car note in the amount *864 of $873.67 per month and temporary support of $850 per month.
A second hearing was held on September 29, 1999. The chancellor subsequently issued an opinion and judgment in which he found Pat to have non-marital assets totaling $115,930 and Bob to have non-marital assets totaling $482,464. The chancellor further found that Pat's monthly income was $1,801 and that her monthly expenses were $3,350. Bob's net monthly income was found to be $7,539 but no finding was made as to Bob's monthly expenses.
The judgment of the chancellor also noted that at the time of the temporary hearing in 1997, Pat's separate investments totaled $65,000, but that at the time of judgment those investments had been reduced to $42,000. Bob's separate investments at the time of the temporary hearing amounted to $396,964, but they grew to $618,214 by the time of judgment. A key factor in the chancellor's decision was the fact that Bob had canceled Pat's medical insurance coverage without her knowledge, and that as a result, Pat was forced to pay some $19,500 in medical bills from her own funds.
Those assets classified as marital assets in the trial court's opinion and judgment were a 1996 Volvo valued at $14,250, $5,898.45 in checking accounts held in Pat's name, $8,848 in checking accounts held in Bob's name only, and the $221,250 growth on Bob's separate investments between the time of the temporary hearing and the time of judgment. The chancellor granted Pat the exclusive use and possession of the Volvo and ordered Bob to pay Pat "lump sum alimony" in the amount of $104,974.77, which he found to be "one half of the marital assets" less the value of the Volvo and the $5,898.45 which Pat held in her separate checking accounts.
Haney, 788 So.2d at 864 (¶¶ 2-6).
¶ 4. On remand, the chancellor sent a letter to counsel asking for a statement of their positions on the remanded issues. Bob's counsel requested an opportunity to present testimony and argument. The chancellor rejected this request. On December 5, 2001, the chancellor issued a revised opinion and judgment based solely on the prior evidence. The chancellor's judgment discussed the Cheatham factors, ordered Bob to pay lump sum alimony in the sum of $104,974.77, and ordered Bob to pay Pat's attorney's fees in the amount of $5,696.39.

ANALYSIS
¶ 5. Following the standard of review, which we stated in Haney, 788 So.2d at 864-65(¶ 7), we consider three assignments of error.

1. Whether the chancellor erred by declining to hear additional testimony or conduct a hearing after the case was remanded.

¶ 6. Bob argues that the chancellor erred by declining to hear additional testimony after the case was remanded. We agree.
¶ 7. A concise review of the chronology is important. Pat and Bob were married on February 11, 1996, and they separated on July 7, 1997. A temporary hearing was held on November 10 and December 15, 1997. The temporary judgment was entered on January 8, 1998. A second hearing was held on September 29, 1999, and the chancellor's initial opinion was rendered November 10, 1999. After appeal, our decision was released on June 26, 2001. The chancellor's revised opinion and judgment was rendered on December 20, 2001.
*865 ¶ 8. Pat and Bob lived together as husband and wife for less than seventeen months. Yet, they have been involved in litigation since August of 1997, more than six years now. The market values used by the chancellor were current as of September of 1999, but were significantly out-of-date as of December 20, 2001, as the financial markets have declined significantly.
¶ 9. On remand, the chancellor sought additional relevant information in the form of a statement regarding the parties' respective positions on the remanded issues. Bob asked to present such additional information through courtroom testimony and argument. Bob's counsel asked the court to consider "the drastic worsened financial condition of [Bob] that has transpired between the original Opinion and Judgment of this Court and its revised Opinion and Judgment aforesaid, dated December 5, 2001." To support this request, Bob cited the liquidation of his financial assets caused by the September 11, 2001 terrorist attack and the significant decline in the stock market. Bob also argued that Pat's remarriage shortly after the original trial would impact her need and ability to receive alimony. The chancellor denied Bob's request and rendered the decision based on outdated valuations.
¶ 10. The principle governing this issue is clearly set forth in the leading treatise on chancery practice, which states:
The chancellor should allow whatever amendments are necessary that he may consider the action as the parties are situated on the date of the remand hearing. To hold otherwise would not be equitable.
Billy G. Bridges & James W. Shelson, Griffith Mississippi Chancery Practice § 700 (2000 ed.) (citing McKay v. McKay, 312 So.2d 12 (Miss.1975)). See also Rainer v. Rainer, 393 So.2d 475, 477 (Miss.1981)(chancellor correctly sustained motion to amend and consider the cause as the parties were situated on the date of the remand hearing).
¶ 11. Because the values of the non-marital assets from which the lump sum alimony award was to be made were ever changing, based on current market valuations and the lengthy intervening time period, it was vital that the chancellor consider evidence of any substantial change in value or any disposition of assets to arrive at a just, fair and proper decision. At a minimum, equity and justice required that the chancellor grant a party an opportunity to present any relevant evidence to establish changed circumstances that may affect a party's ability to comply with the court's final order.
¶ 12. The proper procedure on remand was for the chancellor to allow testimony regarding the parties' changed circumstances. The principles of equity and justice demand it. Because he did not, we are of the opinion that the chancellor failed to properly consider the Cheatham factors in the award of lump sum alimony. Therefore, we reverse and remand the case for further proceedings consistent herewith.

2. Whether the chancellor abused his discretion because there was no substantial evidence warranting lump sum alimony.

¶ 13. In Haney, we reversed and remanded the case for the chancellor to provide "specific findings of fact and conclusions of law on this issue [lump sum alimony] based upon the above mentioned Cheatham factors." Haney, 788 So.2d at 866 (¶ 11). The specific findings of fact and conclusions of law are necessary so that we, as an appellate court, may complete our task which is to determine whether the chancellor's consideration of the Cheatham factors was manifestly wrong, clearly erroneous or an erroneous *866 legal standard was applied. In Haney, we reasoned that "[t]he chancellor did not illustrate his analysis of this marriage under the Cheatham factors. Thus, we are left with no guidance by which to review his decision." Haney, 788 So.2d at 865-66(¶ 11). Deprived of the information necessary to complete our task, we asked the chancellor to explain his decision.
¶ 14. On remand, the chancellor issued a revised opinion and final judgment. In the revised judgment, the chancellor again failed to illustrate, analyze or explain how each Cheatham factor affected his consideration and supported the award of lump sum alimony. Here, the chancellor made only a factual finding on each element. As discussed in detail below, the chancellor wholly failed to explain his reasoning behind the award of alimony. Thus, we are, yet again, left with "no guidance by which to review his [the chancellor's] decision." Id. Encountered with the same problem as before, we must again reverse and remand for an appropriate decision with the necessary analysis.
¶ 15. To further support our conclusion and to assist the chancellor on remand, we include the following discussion of the Cheatham factors.
¶ 16. The first Cheatham factor is the "substantial contribution to accumulation of total wealth of the payor, either by quitting a job to become a housewife or assisting in spouse's business." Cheatham, 537 So.2d at 438. In the revised judgment, the chancellor found that Bob and Pat were married for seventeen months, Pat became sick, and she provided clerical assistance to Bob's business for three or four months. This is not the typical evidence of a substantial contribution to the total wealth. Indeed, based on the chancellor's analysis before us, this is a factual finding and is not sufficient to be the basis for an award of alimony.
¶ 17. The second factor is the "length of the marriage." Id. The chancellor concluded that "[t]he parties were married for approximately 17 months." Again, this is a factual finding, not an analysis. The chancellor failed to explain how he determined that a marriage of seventeen months is sufficient to award lump sum alimony.
¶ 18. The third factor is the "separate income of the recipient spouse as compared to that of the paying spouse." Id. The chancellor determined that Pat had a monthly income of $1,801 compared to Bob's monthly income of $7,539. We discuss this factor below.
¶ 19. The fourth factor is the "financial security of the recipient spouse absent the lump sum payment." Id. The chancellor determined that Pat had non-marital assets valued at $115,930 and Bob had non-marital assets valued at $703,714.[1] The chancellor also found that the discrepancy in non-marital assets was due to the significant loss incurred in the liquidation of Pat's printing business, owned and operated independent of Bob, that occurred after they separated.
¶ 20. The chancellor then, without explanation, held "[t]herefore, based on the Cheatham factors set out above, the Court finds that Bob Haney has sufficient income and ability to pay unto Pat (Robertson) Haney, as lump sum alimony, the sum of $104,974.77."
*867 ¶ 21. The evidence in this case, however, clearly established that throughout their marriage Pat and Bob maintained separate residences and separate businesses. Pat did little to contribute to the accumulation of Bob's total wealth. Pat's business decisions caused the drastic reduction in her own wealth and in her income. Bob and Pat maintained separate checking accounts and had separate investments. Their marriage lasted for only seventeen months. Without an analysis from the chancellor to explain or illustrate how he arrived at this decision, the only conclusion that the record supports is that Pat and Bob, although married, lived lives that were financially separate and independent of each other or their marriage.
¶ 22. The chancellor's opinion seems to base the award of lump sum alimony primarily on Pat's medical problems. The chancellor noted that Pat had to invade her investments to pay certain medical bills. He also noted that Bob had stopped carrying Pat on his insurance coverage at work. A more appropriate remedy, than lump sum alimony, would have been for the chancellor to order Bob to pay for or maintain Pat's health insurance, a remedy we suggested in our original opinion. Haney, 788 So.2d at 866 (¶ 11). The chancellor also could have ordered Bob to pay a portion of Pat's medical expenses.
¶ 23. The third Cheatham factor is the most important. Cheatham, 537 So.2d at 438. However, it is not the only factor. The chancellor must provide this court with an explanation of his analysis of these factors to support the award of lump sum alimony. The chancellor's revised judgment simply failed to comply with the directive of this Court. Therefore, we reverse and remand for a new hearing for the chancellor to properly consider the Cheatham factors and to render an opinion which contains "specific findings of fact and conclusions of law on this issue [lump sum alimony] based upon the above mentioned Cheatham factors." Haney, 788 So.2d at 866 (¶ 11).

C. Whether the chancellor erred in awarding attorney's fees.

¶ 24. Bob argues that no evidence was presented to establish that Pat was unable to pay her own attorney's fees. The dissent claims that because Bob only addresses this issue with a one sentence statement in his brief, it should not be considered. However, we find this appeal is the continuation or second round of a lengthy domestic case. The issue has been adequately preserved for review on appeal.
¶ 25. Paragraph twelve of this Court's original opinion stated the law on the award of attorney's fees. Id. at 866 (¶ 12). "Mississippi maintains a general rule that where a party is financially able to pay her attorney, an award of attorney's fees is not appropriate." Id. (citations omitted). Relying on Pat's estimated monthly income and expenses is not enough. It was readily apparent from her non-marital assets and the award of lump sum alimony that Pat Haney had sufficient financial ability to pay her attorney's fees. The chancellor's award of attorney's fees was an abuse of discretion and was clearly erroneous. Accordingly, we reverse and render the chancellor's award of attorney's fees.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF UNION COUNTY IS REVERSED AND REMANDED. ON THE ISSUE OF ATTORNEY'S FEES THE JUDGMENT IS REVERSED AND RENDERED. COSTS ARE ASSESSED TO THE APPELLEE.
SOUTHWICK, P.J., BRIDGES, IRVING, AND CHANDLER, JJ., *868 CONCUR. MYERS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND THOMAS, J. McMILLIN, C.J., AND LEE, J., NOT PARTICIPATING.
MYERS, J., dissenting.
¶ 27. I respectfully dissent. This Court has reviewed the facts of this case once before. Haney v. Haney, 788 So.2d 862 (Miss.Ct.App.2001). The case was then reversed and remanded for findings of fact and conclusions of law on two narrow issues. One, the chancellor was instructed to analyze the Cheatham factors and determine if an award of lump sum alimony to Pat Haney was equitable given the four factors. Two, the chancellor was instructed to take into account Pat Haney's interest in a printing company when making a determination on whether she was entitled to attorney's fees. Id. at 866. No other issues were placed before the chancellor on remand. Keeping in mind our limited standard of review, I find the chancellor on remand was not manifestly wrong, nor clearly erroneous and applied the correct legal standard. See McNeil v. Hester, 753 So.2d 1057, 1063 (¶ 21) (Miss.2000). Therefore, I dissent.

I. THE CHANCELLOR DID NOT COMMIT MANIFEST ERROR BY DECLINING TO HEAR ADDITIONAL TESTIMONY OR CONDUCT A HEARING AFTER THE CASE WAS REMANDED BY THE COURT OF APPEALS.
¶ 28. Bob argues that the chancellor committed error by declining to hear additional testimony or conduct a hearing after the case was remanded. The majority agrees and states, "At a minimum, equity and justice required that the chancellor grant a party an opportunity to present any relevant evidence to establish changed circumstances that may affect a party's ability to comply with the court's final order." The majority holds that Bob should have been afforded the opportunity to present testimony on his drastically worsened financial condition since the time of the chancellor's original opinion and judgment.
¶ 29. I disagree with the majority's position that Bob should have been afforded that opportunity. We remanded the case on two limited grounds. One, the chancellor was to make specific findings of fact and conclusions of law on the lump sum alimony award to Pat based on the Cheatham factors. Two, the chancellor was to consider Pat's interest in a printing company when determining whether she should be awarded attorney's fees. We did not order that additional hearings be held or testimony be brought before the chancellor could make his determination according to Cheatham. There was no need for the chancellor to hear additional evidence on remand because the record provided sufficient evidence and testimony concerning the Cheatham factors.
¶ 30. The majority argues that the chancellor did not have enough evidence to make a ruling because he did not have evidence of Bob and Pat's current financial conditions. I do not agree with the majority's position that the changed circumstances of Bob and Pat warrant the remand of this case for a second time. Bob argues, and the majority agrees, that due to the liquidation of his financial assets and Pat's remarriage, the financial situation of both parties should be re-evaluated. I disagree with his argument and the majority's opinion that Bob should be allowed to argue changed circumstances to the detriment of Pat and thereby attempt to escape payment of lump sum alimony. It was within the chancellor's discretion whether or not to hold additional hearings on this matter and there was no need to do so *869 given the superfluous evidence in the record.

II. THE CHANCELLOR DID NOT ABUSE HIS DISCRETION BY AWARDING PAT HANEY LUMP SUM ALIMONY.
¶ 31. The majority states that the chancellor "again failed to illustrate, analyze or explain how each Cheatham factor affected his consideration and supported the award of lump sum alimony." I disagree with the majority's position. In Cheatham, the supreme court listed several factors to be considered by the chancellor in determining whether to award lump sum alimony: 1) the substantial contribution to the accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business, 2) a long marriage, 3) where the recipient spouse has no separate income or the separate estate is meager by comparison, and 4) without the lump sum award the receiving spouse would lack any financial security. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). A closer analysis, however, reveals that the single most important factor undoubtedly is the disparity of the separate estates. Id.; Retzer v. Retzer, 578 So.2d 580, 592 (Miss.1990); Tilley v. Tilley, 610 So.2d 348, 352 (Miss.1992).
¶ 32. When we reversed and remanded the present case, the chancellor re-analyzed the facts of the case according to the Cheatham factors previously outlined. I disagree with the majority that we are left with no guidance in which to review the chancellor's decision. The chancellor's revised opinion and judgment sets out the Cheatham factors and a brief analysis of the facts that coincide with each factor. Because the chancellor followed our instructions on remand, we are to consider only whether his decision to award lump sum alimony was clearly erroneous or manifestly wrong. McNeil, 753 So.2d at 1063.
¶ 33. While the majority is correct in stating that the chancellor did not go into great detail on each factor, it was within the chancellor's discretion not to do so. We instructed him to make specific findings of fact and conclusions of law, not a lengthy legal analysis on each point. Tracking the factors in Cheatham, the chancellor found that the couple had been married for approximately 17 months and that Pat quit her job due to illness. After quitting her job, Pat helped Bob with clerical work for his business for three to four months. The chancellor found Pat to have a monthly income of $1,801, most of which came from disability benefits. Bob was found to have a significantly larger monthly income of $7,539. The chancellor found that Pat had reasonable monthly expenses of $3,350 which greatly exceeded her total monthly income. The proof in the present case showed that Pat suffers from a medical disability that limits her ability to earn a living. Pat had been using her savings to meet her monthly expenses.
¶ 34. Given all of these facts, the most important factor is the disparity of Bob and Pat's estates. Retzer, 578 So.2d at 592. The chancellor found Pat to have non-marital assets of $115, 930 and Bob to have non-marital assets of $703,714. Clearly, there is quite a disparity between the two estates. The chancellor had two opportunities to review the facts and law of this case and he decided both times that Bob should pay Pat $104,974.77 in lump sum alimony. The majority opines that the primary basis of the award is Pat's medical problems. The chancellor heard testimony that Bob had Pat excluded from his insurance coverage at work without notifying her. We can only speculate as to whether or not this played a part in the chancellor's decision. We do know, however, *870 that the chancellor made his findings of fact and conclusions of law on lump sum alimony according to Cheatham.
¶ 35. I disagree with the majority that the chancellor abused his discretion in awarding lump sum alimony to Pat. The chancellor had ample evidence before him to make this award given the great disparity between the two estates, Pat's meager monthly income in comparison to her significant monthly expenses, and Pat's need for financial security. Likewise, the chancellor followed our narrow instructions on remand and did not abuse his discretion by awarding lump sum alimony to Pat.

III. THE CHANCELLOR DID NOT COMMIT ERROR BY AWARDING ATTORNEY'S FEES.
¶ 36. I would affirm the chancellor's award of attorney's fees to Pat. Bob failed to raise this as an issue in his first appellate brief and again merely mentions the attorney's fees in the concluding sentence of his second brief. He cites one case to support his position. Bob failed to adequately demonstrate that the chancellor abused his discretion by awarding attorney's fees to Pat. The majority fails to recognize the great discretion a chancellor has in awarding attorney's fees in divorce cases. Smith v. Smith, 614 So.2d 394, 398 (Miss.1993) (citing Martin v. Martin, 566 So.2d 704 (Miss.1990); Devereaux v. Devereaux, 493 So.2d 1310 (Miss.1986); Kergosien v. Kergosien, 471 So.2d 1206 (Miss.1985)). Accordingly, I would affirm the chancellor's award of attorney's fees.
KING, P.J., AND THOMAS, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The chancellor noted that Pat's non-marital assets included mutual funds valued at $41,930.01 and Bob's non-marital assets included equity investments totaling $618,214. As part of the opinion, the chancellor noted that Bob's asset value included "$221,250.00 of which resulted in growth between the temporary [December 15, 1997] and final [September 29, 1999] hearings."