# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-01684-SCT

*JAMES B. YELVERTON*

*v.*

*RHONDA H. YELVERTON*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/29/2004 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL J. MALOUF |
| | MELISSA A. MALOUF |
| ATTORNEY FOR APPELLEE: | DAMON SCOTT GIBSON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THIS CASE IS REMANDED TO THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION - 07/26/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     The Chancery Court for the First Judicial District of Harrison County entered a final

judgment granting Rhonda H. Yelverton (Rhonda) a divorce from James B. Yelverton[1] and

---

[1]James B. Yelverton is also referred to in the record as Jim and Jimmy, but for consistency we will refer to him as James.

ordering James to pay Rhonda lump sum alimony in the amount of $250,000 (with minimum monthly payments of $5,000); child support in the amount of $2,500 per month; periodic alimony in the amount of $2,500 per month; twenty-five percent of James's annual adjusted gross income above $150,000; and $10,000 in attorney's fees. James appealed to us, assigning five issues, and Rhonda cross-appealed, assigning one issue. We assigned this case to the Court of Appeals, which affirmed the chancery court's judgment *in toto* on both direct appeal and cross-appeal. We granted James's petition for writ of certiorari, and upon careful consideration of the record and the applicable law, we find that the judgment of the Court of Appeals must be reversed and this case remanded to the trial court for further proceedings consistent with this opinion.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. The Court of Appeals meticulously set out the relevant facts of this case, which we thus present here verbatim:

James and Rhonda were married on September 7, 1988, and have three children. At the time of the filing of the divorce in February of 2002, Jason was nineteen,[2] Blake was eleven and Elizabeth was ten. The Yelvertons lived in Hattiesburg, Mississippi[,] and Lafayette, Louisiana, prior to moving to Gulfport, Mississippi[,] in 1992. James was a car salesman, and Rhonda was a registered nurse. James took a job as the manager of Turan Foley Mitsubishi, which he and Rhonda later purchased in 1996 for $488,000. Turan Foley Mitsibushi then became Jim Yelverton Imports. In 2001, James sold fifty-two percent of the business to Ed Wettach for $654,825.93. The two executed a memorandum of agreement, that was introduced into evidence, and explained that James retained forty-eight percent of the business and his silent

---

[2]Jason is Rhonda's child by a previous marriage, but after James's marriage to Rhonda, James adopted Jason.

2

partner, Wettach, held the remaining fifty-two percent. This sale became complete in January 2001.

Since the time Elizabeth was born in January of 1992, Rhonda did not work. She began working as a nurse part-time in April of 2002. In December 2002, James and Rhonda purchased a residence referred to as the Magnolia property as an investment. James and Rhonda separated on January 25, 2002, and Rhonda filed for divorce on February 18, 2002, on the ground of habitual cruel and inhuman treatment.[3] After the separation, James resided at the Magnolia property, and Rhonda resided in the marital home with the children. On March 13, 2003, the chancellor entered a temporary order awarding the parties joint legal custody of the children and Rhonda having sole physical custody and James having visitation. The chancellor further ordered James to pay child support in the amount of $4,000 per month and temporary alimony. Rhonda was awarded use of the marital home and was responsible for the house note. At the time, the chancellor appointed James Koerber to assess the worth of Jim Yelverton Imports.

After the entry of this temporary order, James filed a motion for modification listing debts which he had not previously mentioned. However, James violated the temporary order, because he failed to pay both the court ordered child support and alimony. Rhonda filed complaints for contempt against James for his failure to pay both child support and alimony. A hearing was held on the contempt matters on October 15, 2003. At that hearing, evidence was shown that James had only paid Rhonda $11,286.90, when he had owed her over $50,000 in child support and alimony. The chancellor reserved the contempt issue for trial.

The trial took place on November 17, 2003, and January 20, 21, 23, and 26, 2004, in the Chancery Court of the First Judicial District of Harrison County. Both James and Rhonda Yelverton testified along with other witnesses, including James Koerber, who was appointed by the court to evaluate the worth of Jim Yelverton Imports, and Ed Wettach, James's silent partner. Koerber reviewed the business documents of Jim Yelverton Imports and

_____

[3]After filing for divorce in February of 2002, Rhonda and James decided to reconcile. During the reconciliation, the couple decided to purchase the Magnolia Property in December 2002. Subsequent to purchasing the Magnolia Property, Rhonda followed through with the complaint for divorce and in April 2004, a divorce was granted in favor of Rhonda on the grounds of habitual cruel and inhuman treatment.

rendered his opinion that James'[s] forty[-eight] percent interest was worth $490,974 after appropriate discounts. James along with the company accountant, Ed Joe, argued that James and Wettach orally agreed that should the stock of the corporation be sold, Wettach would receive $612,288 (his investment in the company) first and then the two would split the remaining proceeds. Koerber dismissed this agreement since there was no documentation created when this transaction occurred in January of 2001, and it was not until August 2003, after the divorce complaint was filed, that this agreement was put into writing. The parties then agreed that the determination of the value of James's forty eight percent of the company should be left to the court.

The parties' joint tax returns were admitted into evidence to prove the couple's income. In 2001[,] the parties['] total income was $436,742 and in 2002 their income was $873,408 even though Rhonda only began working again part-time in August 2002. After reviewing these tax returns and hearing testimony regarding the loan issue stated above from Wettach to Jim Yelverton Imports, the chancellor found the value of James's forty-eight percent to be $490,974.

The chancellor rendered his findings of fact and conclusion of law on April 13, 2004, and entered his judgment on April 29, 2004. The court granted Rhonda a divorce on the grounds of cruel and inhuman treatment, awarded Rhonda primary custody and control of the minor children, and awarded James visitation after he and the children successfully completed counseling. The court also ordered James to pay child support in the amount of $2,500 per month and to provide medical and dental insurance for the minor children and for the parties to divide non-covered expenses. James was also ordered to pay college expenses for all three children. The court ordered the marital home and the Magnolia property to be sold and the proceeds divided after paying off the mortgage and loans.

The court awarded James ownership of Jim Yelverton Imports, but he was ordered to pay Rhonda $250,000 in lump sum alimony to be paid in minimum installments of $5,000 per month. The parties were ordered to each be responsible for their own personal debt, and Rhonda was awarded $2,500 per month in periodic alimony along with twenty-five percent of James'[s] income over and above the annual adjusted amount of $150,000. Rhonda was also awarded the automobile that she was driving.

The court found James in contempt for his failure to pay ordered child support and spousal support and awarded Rhonda a judgment in the amount of $40,771.83, which was to be paid within sixty days. Lastly, James was

ordered to pay Rhonda's attorney's fees in the amount of $10,000 and court costs.

James filed a motion to reconsider on May 10, 2004. Rhonda filed another contempt action on June 3, 2004. On July 1, 2004, the court heard both the motion to reconsider and the contempt action. The chancellor amended his judgment to require $25,000, which was represented by a deed of trust between James and Jim Yelverton Imports to be paid to Jim Yelverton Imports out of the sale of the Magnolia property before the parties split the equity. Regarding the contempt action, James had only paid Rhonda $4,526.22 between April 1, 2004, and June 30, 2004. The court had ordered James to pay $40,771.83 in arrearage, monthly amounts of $2,500 in child support, $2,500 in periodic alimony and $5,000 in lump sum alimony. He was to pay this within sixty days of the judgment. Evidence also showed that James received funds in the amount of $158,202.13 during this time period.

At this hearing, James testified that he had numerous credit card debts, a new wife and baby to care for. However, evidence was presented that showed while Rhoda and the two minor children had sold the marital home and moved into an apartment as ordered by the court, James had gotten remarried, purchased a Mercedes for his new wife and they were living at the Magnolia property previously ordered to be sold by the chancellor. Therefore, the court found James in wilful contumacious contempt.[4]

*Yelverton v. Yelverton*, 2006 Miss. App. LEXIS 613, **2-8, ¶¶ 4-13.

## PROCEEDINGS BEFORE THE COURT OF APPEALS

¶3.    On direct appeal, James argued that the chancellor erred in awarding Rhonda (1) lump sum alimony in the amount of $250,000 (with a minimum payment of $5,000 per month); (2) $2,500 in monthly child support; (3) $2,500 in monthly periodic alimony; (4) an additional twenty-five percent of James's income over $150,000; and (5) $10,000 in attorney's fees. Additionally, Rhonda cross-appealed alleging that, on the motion to

---

[4]The contempt issue is not before this Court on appeal; thus, we will not address this issue.

reconsider filed by James, the chancellor erred in directing that the proceeds of the sale of the Magnolia Place property be applied to a $25,000 deed of trust to Jim Yelverton Imports.

¶4.     The Court of Appeals affirmed the trial court on all issues.  Today, we reverse the judgment of the Court of Appeals, and remand this case to the trial court for further proceedings consistent with this opinion.

## DISCUSSION

¶5.     In his petition for writ of certiorari, James asks us to consider whether the Court of Appeals erred in (1) failing to reverse the chancellor's judgment which ordered James to pay Rhonda a monthly amount which exceeded his net monthly income; (2) failing to reverse the chancellor due to his failure to make the required findings for the lump sum alimony award, and in applying an erroneous legal standard; (3) failing to reverse the chancellor for his failure to make the required findings to support the child support award; and (4) failing to reverse the chancellor for factual findings which were manifestly in error as to the valuation of Jim Yelverton Imports.  Keeping in mind that pursuant to M.R.A.P. 17(h), we can "limit the question on review" upon a grant of certiorari, we will restate these issues for clarity in discussion.

¶6.     When this Court reviews a chancellor's decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule. *R.K. v. J.K.*, 946 So. 2d 764, 772 (Miss. 2007) (citing *Mizell v. Mizell*, 708 So. 2d 55, 59 (Miss. 1998)).  Therefore, we will "not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or a clearly erroneous standard was

applied." *Id*. Our case law in the area of divorce, child custody and support, alimony, and division of property has evolved over the last three decades. *See Albright v. Albright,* 437 So.2d 1003, 1005 (Miss. 1983) (factors to be considered in child custody cases); *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988) (factors to be considered in lump sum alimony cases); *Hammonds v. Hammonds*, 597 So. 2d 653, 655 (Miss. 1992) (factors to be considered in periodic alimony cases); *Armstrong v. Armstrong*, 618 So. 2d 1278, 1281-82 (Miss. 1993) ( discussion of various awards incident to divorce – periodic alimony; lump sum alimony; division of jointly accumulated property; and, award of equitable interest in property); *Ferguson v. Ferguson,* 639 So. 2d 921, 928 (Miss. 1994) (factors to be considered in equitable division of marital property); *Hemsley v. Hemsley*, 639 So. 909, 915 (Miss. 1994) (definition of marital property to aid chancellor in applying *Ferguson* factors); *Pearson v. Pearson*, 761 So. 2d 157, 165-66 (Miss. 2000) (application of the *Hammonds* factors with minor revised language, cited by the parties in today's case); *Lauro v. Lauro*, 847 So. 2d 843, 846-50 (Miss. 2003) (discussion on application of *Hemsley* factors in determining marital or non-marital assets, application of *Ferguson* factors in equitably distributing marital assets, and application of *Armstrong-Hammonds* factors in determining if an award of alimony is necessary so as to avoid one spouse suffering a deficit distribution); *Haney v. Haney*, 907 So. 2d 948 (Miss. 2005) ( "*Cheatham* factors are really nothing more than an earlier version of the *Ferguson* factors, and both are used for the same purpose." *Id.* at 954, *see also*, *Id.* at 955, ¶26). Likewise, since the legislative creation of the Court of

7

Appeals, effective 1994, that court also has issued numerous opinions on these subjects, some of which will be hereinafter discussed.

## I. WHETHER THE CHANCELLOR ERRED IN AWARDING RHONDA LUMP-SUM ALIMONY IN THE AMOUNT OF $250,000.

¶7.     James asserts that the chancellor failed to apply the *Cheatham* factors with regard to lump sum alimony. *Cheatham v. Cheatham*, 537 So. 2d 435, 438 (Miss. 1988). James opines that *Haney v. Haney*, 788 So. 2d 862 (Miss. Ct. App. 2001) (*Haney I*)[5] and *Miller v. Miller*, 874 So. 2d 469 (Miss. App. 2004) now make it mandatory for a chancellor to make specific findings of fact and conclusions of law regarding the *Cheatham* factors when awarding lump sum alimony. James argues that had the chancellor applied such factors,

---

[5]*Haney I* involved an appeal to the Court of Appeals as to the distinction between equitable distribution of property and lump sum alimony. *Haney I*, 788 So. 2d at 865. The trial court had applied the *Ferguson* factors to the Haney estate to determine each spouse's equal share, but classified the $104,974.77 award to Mrs. Haney as lump sum alimony. *Id*. Thus, the Court of Appeals reversed and remanded to the trial court instructing the trial court to apply the *Cheatham* factors instead of the *Ferguson* factors because the *Cheatham* factors dealt explicitly with lump sum alimony. *Id*. After attempting to apply the *Cheatham* factors, the trial court again awarded the sum of $104,974.77 to Mrs. Haney. *Haney v. Haney*, 881 So. 2d 862 (Miss. Ct. App. 2003) (*Haney II*). Once more, the award was appealed to the Court of Appeals in *Haney II*. *Id*. The Court of Appeals held that the chancellor "failed to illustrate, analyze or explain how each *Cheatham* factor affected his consideration and supported the award of lump sum alimony." *Haney II*, 881 So. 2d at 866. Thus, the Court of Appeals reversed and remanded back to the trial court. *Id*. at 867. Based on the decision in *Haney II*, Mr. Haney petitioned for writ of certiorari, which was granted by us. *Haney v. Haney*, 907 So. 2d 948 (Miss. 2005) (*Haney III*). While we determined that no further analysis was necessary by the chancellor who had previously applied the *Ferguson* factors as opposed to the *Cheatham* factors in *Haney III*, James's argument that a chancellor must make specific findings of fact and conclusions of law concerning the awarding of lump sum alimony is still supported by the decision in *Haney III*.

lump sum alimony never would have been awarded. James likewise argues that the Court of Appeals failed to reverse the trial court for failure to apply the **Cheatham** factors, but instead listed the **Cheatham** factors and stated "All of these factors have been met." **Yelverton v. Yelverton**, 2006 Miss. App. LEXIS at \*10, ¶16.

¶8. History reveals that this Court and the Court of Appeals have considered, at least in part, the guidelines delineated in **Cheatham**, **Haney II**, and **Miller**. In **Cheatham**, this Court outlined the four factors to consider:

> 1) Substantial contribution to accumulation of total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse's business. **Tutor v. Tutor**, 494 So. 2d 362 (Miss. 1986); **Schilling v. Schilling**, 452 So. 2d 834 (Miss. 1984);
>
> 2) A long marriage. **Jenkins v. Jenkins**, 278 So. 2d 446, 449 (Miss. 1973); **Tutor** and **Schilling**, *supra*;
>
> 3) Where recipient spouse has no separate income or the separate estate is meager by comparison. **Jenkins**, **Tutor** and **Schilling**, *supra*;
>
> 4) Without the lump sum award the receiving spouse would lack any financial security. **Abshire v. Abshire**, 459 So. 2d 802, 804 (Miss. 1984).
>
> A closer analysis of these cases, however, reveal[s] that the single most important factor undoubtedly is the disparity of the separate estates.

**Cheatham**, 537 So. 2d at 438. **Haney III** clarified the **Cheatham** factors and stated, "the **Cheatham** factors are really nothing more than an earlier version of the **Ferguson** factors." **Haney III**, 907 So. 2d at 954. In **Haney III**, we likewise stated that "the **Cheatham** factors were simply an earlier attempt by this Court to provide a chancellor with guidelines for awarding what today is called an equitable distribution of marital assets. . . . we see no

9

*Ferguson* factor which would be inappropriate in evaluating lump sum alimony" *Id*. at 955.[6]

That being said, James's assertion is correct that the chancery court was obligated to apply the appropriate factors necessary to determine whether Rhonda was entitled to lump sum alimony, i.e., the *Cheatham-Ferguson* factors.

¶9.     Since we have determined that the *Cheatham* factors are encompassed within the *Ferguson* factors, the *Ferguson* factors should now be set forth and applied in all appropriate situations:

> 1. Substantial contribution to the accumulation of the property (*see Cheatham* factor No. 1).
>
> 2.  The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
>
> 3.  The market value and the emotional value of the assets subject to distribution.
>
> 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as [non-marital assets].
>
> 5.  Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution.
>
> 6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.

---

[6]In fact, in *Haney III*, we did a "side-by-side comparison" of the *Ferguson* factors and the *Cheatham* factors to illustrate how the *Ferguson* factors in essence consumed the *Cheatham* factors.  907 So. 2d at 954-55.

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity (*See Cheatham* factors Nos. 3 & 4).

8. Any other factor which in equity should be considered (*See Cheatham* factor No. 2).

*Haney III*, 907 So. 2d at 954-55. Thus, we turn now to the issue of whether the chancery court appropriately applied these factors in considering the issue of lump-sum alimony.

¶10. In its final judgment entered consistent with very thorough findings of fact and conclusions of law, the chancery court awarded lump sum alimony in favor of Rhonda in the amount of $250,000. In doing so, the chancellor went to great lengths to explain James's misconduct. By way of example, "[t]he Court finds that [James] Yelverton, during the course of the divorce, dissipated the assets of the parties, continued to accumulate debts, refused to pay debts that were due and sold the property of the parties in violation of the Court's Orders and directives." However, the trial court never set out or applied the **Cheatham** factors or the **Ferguson** factors. On appeal, the Court of Appeals outlined the **Cheatham** factors, but with little discussion. *Yelverton v. Yelverton*, 2006 Miss. App. LEXIS 613, ¶16.

¶11. Therefore, since the chancellor in today's case failed to make adequate findings of fact and conclusions of law as to the **Ferguson** factors, we are constrained to reverse the chancellor on this issue and remand this case to the trial court to revisit this issue. *See Lauro*, 847 So. 2d at 847; *Johnson v. Johnson*, 823 So. 2d 1156, 1161 (Miss. 2002); *Sandlin v. Sandlin*, 699 So. 2d 1198, 1204 (Miss. 1997). Upon remand, the chancellor should properly apply the **Ferguson** factors to his findings of fact.

11

## II. WHETHER THE CHANCELLOR ERRED IN AWARDING RHONDA MONTHLY CHILD SUPPORT IN THE AMOUNT OF $2,500.

¶12. James next contends that the chancellor failed to make findings to support his deviation from the child support guidelines as required by Miss. Code Ann. § 43-19-101 (Rev. 2004) and *Chesney v. Chesney*, 910 So. 2d 1057 (Miss. 2005). According to Miss. Code Ann. § 43-19-101:

> (1) The following child support award guidelines shall be a rebuttable presumption in all judicial or administrative proceedings regarding the awarding or modifying of child support awards in this state:
>
> | Number Of Children Due Support | Percentage Of Adjusted Gross Income That Should Be Awarded For Support |
> |---|---|
> | 1 | 14% |
> | 2 | 20% |
> | 3 | 22% |
> | 4 | 24% |
> | 5 or more | 26% |
>
> (2) The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.
> . . . .
>
> (4) In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.

¶13. The chancery court, in its findings of fact and conclusions of law, merely stated "[t]he Court finds that based on [James]'s income, the needs of the children and their related

12

expenses, the statutory guidelines should not apply." Subsection (4) of section 43-19-101 no doubt applies, since James's adjusted gross income was unquestionably well above $50,000; however, the chancellor's findings in today's case fell short of subsection (4)'s requirement that "the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable." Likewise, subsection (4) must be read in conjunction with subsection (2); therefore, in making this finding of the inapplicability of the statutory guidelines, the chancellor failed to fully comply with Miss. Code Ann. § 43-19-101(2) by making a "written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103." Indeed, if a chancellor deems it appropriate to deviate from the statutory guidelines, the chancellor must make a written finding or a specific finding on the record that the application of the guidelines is "unjust or inappropriate" as determined by the criteria set out in Miss. Code Ann. § 43-19-103 (Rev. 2004), which provides:

> (a) Extraordinary medical, psychological, educational or dental expenses.
> (b) Independent income of the child.
> (c) The payment of both child support and spousal support to the obligee.
> (d) Seasonal variations in one or both parents' incomes or expenses.
> (e) The age of the child, taking into account the greater needs of older children.
> (f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.
> (g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.

13

(h) Total available assets of the obligee, obligor and the child.

(i) Any other adjustment which is needed to achieve an equitable result which may include, but not limited to, a reasonable and necessary existing expense or debt.

Stated differently, in order for this Court to affirm a chancellor's award which deviates from the guidelines of Miss. Code Ann. § 43-19-101(1), we must find from the record that the chancellor was able to "overcome the rebuttable presumption that the statutory award is the appropriate measure of child support by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines." **Chesney**, 910 So. 2d at 1061.

¶14. However, the chancellor determined that James was capable of earning at least $12,000 per month after taxes. Applying the mandatory child support guidelines outlined in Miss. Code Ann. § 43-19-101(1), James would be required to pay $2,400 per month. That being said, the chancery court required James to pay an extra hundred dollars a month for child support, which was a clear deviation from the guidelines.

¶15. In addition, as explained *infra*, the chancellor, on remand, will be required to re-evaluate James's net worth. Upon revisiting this issue, should the chancellor decide again to deviate from the statutory guidelines, the chancellor must make a specific, on-the-record finding which overcomes the rebuttable presumption. Because this issue has merit, we reverse and remand to the chancery court.

14

### III. WHETHER THE CHANCELLOR ERRED IN AWARDING RHONDA MONTHLY PERIODIC ALIMONY IN THE AMOUNT OF $2,500.

¶16.    Based on the chancellor's judgment, James is required to pay Rhonda $10,000 per month as follows:

(1) Lump Sum Alimony - $5,000 per month for the next 50 months

(2) Child Support  - $2,500 per month

(3) Periodic Alimony - $2,500 per month.

¶17.    As stated, *supra*, the chancellor determined that James was capable of making $12,000 a month after taxes, but he also determined that James's reasonable monthly expenses were $6,429.  As for Rhonda, the chancellor determined that the necessary expenses for Rhonda and the children added up to $6,000, and that Rhonda currently earned $2,118.65 per month working part-time as a nurse.  The chancellor concluded, however, that Rhonda was capable of working full-time, which would result in an increase in her monthly salary.

¶18.    Thus, although recognizing that James had to spend $6,429 per month on his expenses, the chancellor ordered James to pay Rhonda $10,000 per month.  This award would give Rhonda approximately $12,118.65 a month, although her monthly expenses totaled only $6,000, and would leave James with a negative balance of $4,429 per month.  Such action by the chancellor leaves James destitute and in hopeless continuous contempt of court.  Furthermore the award is not equitable and fair and is *per se* unreasonable.  *See Brooks v. Brooks*, 652 So. 2d 1113, 1124 (Miss. 1995).

15

¶19. In *Brooks*, the husband was required to pay the wife more per month than he earned. On appeal, this Court stated:

> In order to achieve equitable and fair results incident to a divorce, awards of alimony and any division of property should be considered together by a chancellor. We have unequivocally stated that proposition, as follows:

> > **All** property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together. . . .

> > . . . .

> > **In the final analysis, all awards should be considered together to determine that they are equitable and fair.**

652 So. 2d at 1124 (citing *Ferguson*, 639 So. 2d at 929). (Emphasis in original). Additionally, a "chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living." *Brooks*, 652 So. 2d at 1222 (citing *Massey v. Massey*, 475 So. 2d 802, 803 (Miss. 1985)). Thus, Rhonda's award of periodic alimony must also be reversed and remanded. Consistent with *Armstrong*, 618 So. 2d at 1280-82, and its progeny, the chancellor should consider all payments of support and division of property together to arrive at an equitable and fair result, on this issue and all other issues.

## IV. WHETHER THE CHANCELLOR ERRED IN CALCULATING THE VALUE OF JIM YELVERTON IMPORTS.

¶20. Finally, James asserts that the chancellor was manifestly wrong in his calculation of the value of Jim Yelverton Imports. The chancellor determined that James and Rhonda

possessed only three assets at the time of their divorce: the car dealership (Jim Yelverton Imports) in which Jim owned a 48 percent interest, the marital residence and adjoining lot, and the Magnolia Place property. However, Jim Yelverton Imports is the sole source of income for James. Thus, it is the only source from which James can make his court-ordered payments.

¶21. Since we are remanding this case for other purposes, we need not enter into a lengthy discussion on this issue; however, in an effort to lend guidance to the chancellor upon remand, we state here that the chancellor should be mindful that "goodwill," whether "personal goodwill" or "business enterprise goodwill" shall not be included in the valuation of Jim Yelverton Imports. *See Watson v. Watson*, 882 So. 2d 95, 105, ¶46 (Miss. 2004).[7] "[G]oodwill is simply not property; thus it cannot be deemed a divisible marital asset in a divorce action." *Singley v. Singley*, 846 So. 2d 1004, 1011, ¶ 18 (Miss. 2002).

¶22. The chancellor determined that James's 48 percent minority interest in Jim Yelverton Imports amounted to $490,974 and that James was capable of earning $12,000 per month after taxes. Based on these evaluations, the chancellor arrived at the specified court-ordered payments. While the chancellor is given great discretion and we will not disturb his findings "unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard[,]" we direct that on remand the chancellor should again re-evaluate James's value

---

[7] *Watson* is applicable here although *Watson* involved a "solo professional practice" as opposed to Jim Yelverton Imports, which involves two share holders.

in Jim Yelverton Imports. *Henderson v. Henderson*, 703 So. 2d 262, 264 (Miss. 1997). Consistent with our discussion, *supra*, this re-evaluation should exclude goodwill.

¶23. Because the above issues are intertwined with the value of Jim Yelverton Imports and James's income, the chancellor should take all factors into consideration when making an equitable distribution and awarding support payments.

¶24. As we said in *Lauro*:

> Equitable distribution is the first step in a divorce matter; therefore, upon remand the chancellor must revisit his awards of alimony and child support. Also upon remand, after the marital assets have been properly divided and alimony and child support properly awarded, the chancellor may revisit his award of attorney's fees to [the wife] in the event of any modifications in the division of the marital assets and awards of alimony and child support.

847 So. 2d at 852.

## CONCLUSION

¶25. In sum, for the reasons stated, we reverse the judgment of the Court of Appeals on the issues discussed. We note that in his petition for writ of certiorari, James did not ask us to consider the Court of Appeals' affirmance of the chancellor's $10,000 award in attorney's fees for Rhonda; however, as a result of our decision today, the chancellor is not restricted from revisiting this issue, as well as all issues raised on appeal.

¶26. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED AND THIS CASE IS REMANDED TO THE CHANCERY COURT FOR THE FIRST JUDICIAL DISTRICT OF HARRISON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**