IRVING, J.,
for the Court:
¶ 1. Pursuant to a divorce agreement, Dudley S. Burwell was required to pay Rose Lee Burwell $6,000 per month in alimony. After Dudley filed a petition for reduction of alimony with the Harrison County Chancery Court, he and Rose agreed to temporarily reduce his alimony obligation to $5,000 per month, pending a determination by the chancery court of the merits of his petition. For reasons that are not clear in the record, the chancery court did not rule on Dudley’s petition until several years later, but it found that Dudley was entitled to a reduction in his monthly alimony payments and that the proper amount of monthly alimony is $5,685. The chancellor ordered that Dudley would pay that amount in alimony starting on September 1, 2008. The chancellor also ordered Dudley to pay Rose $77,405, representing the difference between $5,000 and $5,685 for the more than nine years, plus interest, in which Dudley had been paying only $5,000 per month in alimony. Aggrieved, Dudley appeals and asserts that the chancellor erred in finding that the proper amount of monthly alimony is $5,685.
¶ 2. Finding no reversible error, we affirm the judgment of the chancery court.
FACTS
¶ 3. Rose and Dudley were married in Indianola, Mississippi, in 1977. Two children were born during the course of the marriage. In 1997, Rose and Dudley agreed to a divorce on the ground of irreconcilable differences. Rose and Dudley also entered into a divorce agreement, by which Rose ultimately received $6,000 per month in alimony from Dudley, who is an orthopedic surgeon. The agreement provided several provisions by which alimony would either terminate or be reduced, such as Rose reaching a certain age.[1]
¶ 4. In late 1998, Dudley filed a petition requesting that his alimony obligations be modified due to a reduction in his income. In March 1999, an order was entered indi- *423 eating that the parties had agreed that alimony should be temporarily reduced to $5,000 per month. The order also appointed a CPA, Sam LaRosa, to analyze Dudley’s income and financial status. Dudley was ordered to produce his income tax returns for 1996,1997, and 1998.
¶ 5. In May 2001, the chancellor who had been hearing the case recused sua sponte. The order of recusal also dismissed LaRo-sa from the case due to his retirement. There is no indication that LaRosa ever completed any analysis of Dudley’s financial situation. From 2001 to 2005, the case languished with no activity by either party. On August 15, 2005, Rose filed a motion to dismiss the case due to its non-prosecution. The chancery court denied the motion on March 1, 2006. On March 27, 2006, Rose filed a motion for contempt, asking for an increase in the amount of alimony. Dudley responded to that motion with a request for bifurcation; Dudley contended that Rose was required to raise the issue of upward modification in 1999, when Dudley filed his motion for a reduction in the amount of alimony. Rose later withdrew the motion.
¶ 6. After a hearing, the chancery court entered a March 27, 2007, order limiting discovery to the period of time between 1996 and 2000;[2] the chancellor also appointed Robert Culumber, a CPA, to analyze Dudley’s financial information.
¶ 7. Based on Culumber’s analysis, the chancellor determined that Dudley had suffered a 5.25% reduction in his income; accordingly, the chancellor found that Dudley was entitled to have his alimony obligation reduced to $5,685. Consequently, the chancellor found that Dudley owed Rose $77,405 in unpaid alimony and interest.
¶8. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 9. The Mississippi Supreme Court has discussed the standard of review to be applied in domestic-relations cases:
When [an appellate court] reviews a chancellor’s decision in a case involving divorce and all related issues, our scope of review is limited by the substantial evidence/manifest error rule. R.K. v. J.K., 946 So.2d 764, 772 [ (¶ 17) ] (Miss. 2007) (citing Mizell v. Mizell, 708 So.2d 55, 59 [ (¶ 12) ] (Miss.1998)). Therefore, we will “not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or a clearly erroneous standard was applied.” Id.
Yelverton v. Yelverton, 961 So.2d 19, 24 (¶ 6) (Miss.2007).
¶ 10. Dudley maintains that the chancellor improperly averaged Culumber’s income-loss percentages, rather than comparing 1997, 1998, and 1999 to 1996 individually. Dudley contends that, calculated his way, his percentage of loss of income during the time in question was 17.4769%. Dudley cites no case law or statutory authority for his argument that his method of calculation is more proper or appropriate than the chancellor’s.
¶ 11. In the order granting Dudley’s motion for reduction of alimony, the chancellor stated the following regarding how *424 he determined the proper amount of monthly alimony:
Robert Culumber, as instructed by the [c]ourt, prepared an income analysis, complete with percentages of changes thereto and a five (5) year average for both earned income and unearned income .... Dr. Burwell testified that the amount of alimony was based solely upon his earned income from his medical practice. Accordingly, the [c]ourt considers only the earned income from the medical practice analysis in making its determination.
The income analysis indicates that Dr. Burwell had a drop in earned income from his medical practice for the years 1997 and 1998, and an [sic] recovery from those losses, or an increase, in income for the years 1999 and 2000. His average earned income for the years ■ 1996 through 2000 was $382,743.60 and his average loss in earned income from his medical practice from 1996 to 2000 was 5.25 [percent].[3]
The annual alimony payment pursuant to the divorce judgment is $72,000.00 ($6,000.00 per month x 12 months = $72,000.00). Based upon a 5.25% loss of income, his annual alimony payment should have been $68,220.00, or $5,685.00 per month ($72,000.00 x 5.25% = $3,780; $72,000.00 LESS $3,780.00 = $68,220 [divided by 12 months = $5,685.00 per month).
The [c]ourt finds that the documentation presented substantiates the claim and testimony of Dr. Burwell that he suffered a loss of income which justifies a reduction in his alimony payments from $6,000.00 per month to $5,685,00 per month. Pursuant to the March 19, 1999, [c]ourt [o]rder temporarily reducing his obligation, Dr. Burwell has paid alimony in the sum of $5,000.00 per month, resulting] in a monthly deficit of $685.00. As of August 1, 2008, the total alimony arrears owed is $77,405.00 (April 1999 through August 2008 = 113 months x $685.00 = $77,405.00). In keeping with the March 19, 1999, [o]rder, the total arrears shall be paid immediately with no interest, or at his option, the arrear-age may be paid at the rate of not less than $2,000.00 per month, plus 8% interest per annum beginning 30 days from the date of this [o]rder.
As already stated, Dudley has provided no authority in support of his argument that the chancellor should have used a different method to calculate Dudley’s loss in income for the time in question. The chancellor made a logical calculation based on Culumber’s analysis, and there has been no suggestion that Culumber’s calculations are incorrect.
1112. Given our highly deferential standard of review, we find no error with the chancellor’s calculations and conclusions. The chancellor averaged Dudley’s increases and decreases in annual income for the period in question to determine that Dudley had suffered a 5.25% loss in income. There is no error or abuse of discretion on the chancellor’s part in doing so.
¶ 13. Therefore, the judgment of the chancery court is affirmed.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*425 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.

. The chancellor acknowledged the reduction/termination provisions, but made no finding as to whether any of the triggering conditions had come to pass.

. Rose had asked that discovery be expanded to include 2001-2006; however, the chancery court declined to consider anything newer than Dudley's 2000 tax returns, reasoning that discovery should be limited to the time when Dudley first filed the motion for modification. No issue has been made on appeal by either party regarding the period of discovery.

. According to Culumber, Dudley suffered: a 14.67% loss in income from 1996 to 1997; a 19.04% loss in income from 1997 to 1998; an 18.02% increase in income from 1998 to 1999; and a 15.48% increase in income from 1999 to 2000. The chancellor then added these percentages together and divided by four to determine that, overall, Dudley had suffered a 5.25% loss in income between 1996 and 2000.