# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01298-COA

**RACHEL D. THOMAS**                                                   **APPELLANT**

**v.**

**MICHAEL J. CREWS**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2015 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LISA JOY GILL |
| ATTORNEY FOR APPELLEE: | JEFFREY BIRL RIMES |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | MODIFIED CHILD-CUSTODY AND CHILD-SUPPORT AGREEMENT AND DENIED ATTORNEY'S FEES |
| DISPOSITION: | AFFIRMED - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., JAMES AND WILSON, JJ.**

**JAMES, J., FOR THE COURT:**

¶1.     This appeal arises from the modification of Rachel D. Thomas and Michael J. Crews's child-custody and child-support agreement. Thomas appeals two issues: the chancery court's child-support award of $1,000 per month and its denial of attorney's fees. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Thomas and Crews divorced on May 24, 2007. The couple had a minor daughter, Lunden Crews. As a result of the divorce, Thomas and Crews entered into a child-custody

and child-support agreement.

¶3.    The agreement governed Crews's visitation schedule with Lunden.   Beyond the visitation schedule, the agreement also required Crews to pay Thomas $560 in child support on the third day of each month.   Thomas and Crews agreed to equally split the costs of any of Lunden's extracurricular activities—an undefined term in the agreement.

¶4.    A few months after the divorce, Thomas and Lunden moved from Jackson, Mississippi, to Olive Branch, Mississippi.   As Lunden aged, she was diagnosed with attention deficit disorder, and the condition led to some friction between Thomas and Crews over Lunden's care.   Thomas claimed that Crews refused to accept the diagnosis and thwarted her attempts to have Lunden treated.   On the other hand, Crews claimed that Thomas scheduled doctor visits during his appointed visit times.

¶5.    Besides this tension over Lunden's health, Lunden also joined a competitive volleyball team.   Crews claimed that Thomas used Lunden's time commitments with the team as an excuse to skip his visitation time or attempt to force Crews to visit Lunden at her out-of-town volleyball events.   Thomas alleged that Crews prevented Lunden from going to certain practices and that Lunden "grew fearful and upset" when she discovered that Crews did not plan to take her to practice.   Crews alleged that Thomas intentionally developed this fear in Lunden.

¶6.    Despite these conflicts, Thomas and Crews continued under their original agreement until Thomas filed a petition to modify visitation and child support on June 30, 2014. In the petition, Thomas sought to modify the visitation schedule, increase the child-support

2

payments, and recover attorney's fees.

¶7. The chancery court set the hearing on the petition for December 5, 2014. Thomas served notice of interrogatories and requests for production of documents on October 22, 2014. On December 1, 2014, due to the chancellor's poor health, the parties entered an agreed order to reschedule the hearing for May 5, 2015.

¶8. On April 3, 2015, Thomas filed her certificate of compliance with Rule 8.05 of the Uniform Chancery Court Rules, governing the disclosure of financial statements. That same day, Thomas filed a motion to compel discovery, which the chancery court scheduled for a hearing on April 30, 2015. Next, Thomas issued Community Bank, Trustmark Bank, Shelter Insurance, and Crews LLC subpoenas on April 6, 2015. The Community Bank and Trustmark subpoenas were served on April 21, 2015, and the Shelter Insurance subpoena was served on April 23, 2015.

¶9. On April 27, 2015, Crews moved to quash the subpoenas on the banks, arguing that they were too broad and requested information that was not related to the subject matter of the litigation. The next day, April 28, 2015, Crews filed his answer and counterclaimed for contempt against Thomas. Crews alleged that Thomas denied his visitation rights by requiring him to travel to Lunden's competitive volleyball events and that Thomas failed to maintain the requisite life-insurance policy required by the parties' child-support agreement or, if she did have a policy, that she failed to notify Crews. The following day, Crews filed a notice of service of discovery with the chancery court. Additionally, Crews filed his notice of compliance with Rule 8.05 on April 30, 2015. That day, while waiting at the chancery

3

court for the hearing on the motion to compel discovery and the motion to quash, the parties conducted an informal deposition of Crews to supplement his discovery responses.

¶10. After the hearing on the petition to modify, the chancellor ruled from the bench. The chancellor found three material changes of circumstance: (1) Thomas's move to north Mississippi; (2) Lunden's enrollment in competitive volleyball; and (3) Thomas's and Crews's substantial increases in income over the years.

¶11. As to child support, the chancellor ordered Crews to pay $1,000 per month. The chancellor specifically found "that this amount i[s] within the guidelines considering all the other matters that the Father is required to pay for." The chancellor noted that the term "extracurricular expenses" meant those expenses that are incurred through Lunden's school activities. The chancellor also denied Thomas's request for the modification of the child-support award to apply retroactively.

¶12. In addition, the chancellor declined to award either party attorney's fees as it found that "both parties [were] able to pay their own attorney's fees."

¶13. There are two issues on appeal: (1) whether the chancellor abused his discretion in awarding $1,000 per month in child support and in clarifying the term "extracurricular" in the original child-support agreement, and (2) whether the chancellor abused his discretion in denying Thomas's request for attorney's fees.

**STANDARD OF REVIEW**

¶14. In a domestic case, this Court will only disturb a chancellor's findings if the decision was manifestly wrong or clearly erroneous, or the chancellor applied an erroneous legal

4

standard. *Lewis v. Pagel*, 172 So. 3d 162, 172 (¶16) (Miss. 2015). "Chancellors are afforded wide latitude in fashioning equitable remedies in domestic relations matters, and their decisions will not be reversed if the findings of fact are supported by substantial credible evidence in the record." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 707 (¶9) (Miss. 2014). Where the chancellor does not make a specific finding, the Court is required, on review, to assume "that the [c]hancellor resolved all such fact issues in favor of [the] appellee." *Newsom v. Newsom*, 557 So. 2d 511, 514 (Miss. 1990).

## DISCUSSION

**I.      The Chancellor's Award of Child Support**

**A.      Child-Support Award**

¶15.    The chancellor's child-support award was supported by substantial credible evidence. This Court limits its review of a child-support award because such an award "is essentially an exercise in fact-finding." *Chesney v. Chesney*, 910 So. 2d 1057, 1060 (¶5) (Miss. 2005). Mississippi Code Annotated section 43-19-101(2) (Rev. 2015) states:

> The guidelines provided for in subsection (1) of this section apply unless the judicial or administrative body awarding or modifying the child support award makes a written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case as determined under the criteria specified in Section 43-19-103.

Section 43-19-103 provides several criteria that a chancellor may use to determine the appropriate child-support award where section 43-19-101's guidelines are "inappropriate in a particular case." *Id*. § 43-19-103. Subsection 43-19-103(j) describes one criterion a chancellor can use in calculating child support: "Any other adjustment which is needed to

5

achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt." *Id*. § 43-19-103(j).

¶16.    While the chancellor's award of child support to Thomas was not as detailed as it could have been, the substantial credible evidence in the record demonstrated that the chancellor did not abuse his discretion.  In his order, the chancellor specifically held that the award "should be set at One Thousand Dollars ($1,000.00) per month, finding that this amount i[s] within the guidelines considering all the other matters that the Father is required to pay for."  The chancellor's consideration of the "other matters" Crews paid for recognized the inappropriateness of section 43-19-101 to the particular case.[1]  The record shows that the chancellor was referencing Crews's employment responsibilities as well as his 8.05 financial disclosure.

---

[1] Any argument questioning the lack of a written finding that the guidelines of section 43-19-101 were inappropriate is procedurally barred.  *See West v. West*, 23 So. 3d 558, 561 (¶¶13-14) (Miss. Ct. App. 2009), *cert. denied,* 23 So. 3d 558 (recognizing that it is "incumbent" upon the litigant to raise the lack of a written finding with the chancellor); *see also Yelverton v. Yelverton*, 961 So. 2d 19, 27 (¶13) (Miss. 2007) (finding in a case where a motion for reconsideration was filed that "the chancellor must make a written finding or a specific finding on the record that the application of the guidelines is 'unjust or inappropriate' as determined by the criteria set out in [section] 43-19-103").  The *Yelverton* court held:

> [I]n order for this Court to affirm a chancellor's award which deviates from the guidelines of [section] 43-19-101(1), we must find from the record that the chancellor was able to overcome the rebuttable presumption that the statutory award is the appropriate measure of child support by making an on-the-record finding that it would be unjust or inappropriate to apply the guidelines.

*Yelverton,* 961 So. 2d at 27-28 (¶13) (internal quotations omitted).  Here, Thomas did not raise the issue of a more detailed finding with the chancellor.  Further, the record supports—as discussed below—a finding from the evidence and testimony that the chancellor overcame the rebuttable presumption.

¶17. At the hearing, Crews stated that he was the sole member of Crews LLC. In 2014, Crews LLC paid Crews a salary of $64,123. After expenses and deductions, Crews LLC had a business income of $66,284. These figures were also supported by Crews's personal 2014 tax return, filed jointly with his wife, Jessica.

¶18. In calculating the award, the chancellor used Crews's salary and a portion of Crews LLC's business income. The chancellor's factual determination balanced Crews as the sole member of Crews LLC with the reality that Crews LLC would require some income for future operating expenses. This determination is within section 43-19-103(j)'s grant of authority to the chancellor to consider "a reasonable and necessary existing expense or debt."

¶19. As an adverse witness called by Thomas, Crews testified at trial concerning the LLC's business income: "Well, the $66,000 income is there . . . for projections for taxes, employee salaries. That's money I have to hold back to make sure I can cover all my expenses; and, typically, I look out 12 to 18 months out." Crews reiterated the same points on redirect examination—moments before the chancellor ruled from the bench. This is credible evidence that the chancellor's reference to "other matters" included Crews's business expenses as owner of Crews LLC. Also, Crews's 8.05 financial disclosure showed that Crews pays $700 in child support under a separate obligation. The chancellor was within the statutory guideline to consider this "necessary existing . . . debt" as a portion of the "other matters" for which Crews was responsible.

¶20. While the chancellor's reasoning supporting the award of child support is not detailed, it is supported by credible evidence in the record. The chancellor stated that his

7

award was "within the guidelines." Crews testified multiple times concerning his business expenses and filed his 8.05 with the chancery court. In addition, Thomas entered Crews's personal and business tax forms into evidence. Further, Thomas's 8.05 revealed that she receives $9,412.61 in gross monthly income, which totals $112,951.32 annually. Thus, there is substantial credible evidence in the record to find that the chancellor did not abuse his discretion.

¶21. Also, the chancellor did not abuse his discretion by denying Thomas's request for a retroactive award. Mississippi Code Annotated section 43-19-34(4) (Rev. 2015) is permissive and provides that "[a]n upward retroactive modification *may* be ordered back to the date of the event justifying the upward modification." *See also A.M.L. v. J.W.L.*, 98 So. 3d 1001, 1018 (¶44) (Miss. 2012) (finding an upward retroactive modification "permissible, but not mandatory").

### B. Clarification of the Term "Extracurricular"

¶22. The chancellor's clarification of the term "extracurricular" is also supported by substantial credible evidence in the record. The chancellor clarified that "extracurricular expenses are those incurred through school. . . . [S]chool volleyball is different than competitive volleyball[.] . . . [I]f the Father wants to pay, that will be up to the Father."[2] At times, Thomas's hearing testimony made the same distinction that the court's order does, but, at other times, Thomas's testimony equated school volleyball and competitive volleyball as

---

[2] Extracurricular is defined as "outside the normal curriculum." *Extracurricular*, The Oxford English Dictionary (2d ed. 1989). Extracurricular activities "are those sponsored by and usually held at school but that are not part of the standard academic curriculum." *Extracurricular Activities*, definitions.uslegal.com/e/extracurricular-activities/.

8

"extracurricular." This confusion justified the chancellor's clarification.

¶23. When first discussing the volleyball teams, Thomas clearly made a distinction between school volleyball as extracurricular and competitive volleyball as different. Thomas referred to "school volleyball" as "the first real extracurricular activity that [Lunden] was interested in." Thomas then testified that Lunden expressed an interest in competitive volleyball. Detailing Thomas and Crews's decision to allow Lunden to play competitive volleyball, Thomas testified, "[Crews] and I talked about it and . . . we agreed that we would split the expenses of the—the training fee and uniforms." Thomas also made this distinction between the two types of volleyball when discussing Lunden's volleyball schedule. In contrast, Thomas, on cross-examination, referenced competitive volleyball as an extracurricular activity, stating that Lunden's "extracurricular activities are expanding. So if she's playing volleyball in Hot Springs, Arkansas, if you want to see her then that's where we have to go." In light of this testimony, the chancellor did not abuse his discretion when he simply "remind[ed] both parties that extracurricular expenses are those incurred through school."

## II. The Chancellor's Denial of Attorney's Fees

¶24. The chancellor did not abuse his discretion in denying attorney's fees. In general, a party is not entitled to attorney's fees where the party has the financial ability to pay the fees. *Magee v. Magee*, 661 So. 2d 1117, 1127 (Miss. 1995). This Court is "reluctant to disturb a chancellor's discretionary determination whether or not to award attorney['s] fees." *Id*.

¶25. The chancellor made the specific finding that "both parties are able to pay their own

9

attorney's fees, so the Court will not award attorney's fees to either side." The record supports this finding. Thomas's gross income is $9,412.61 monthly or $112,951.32 annually. She owns her home and drives a 2013 sedan. Further, Thomas's bank statements reflect multiple charges for items that are not necessaries. While Thomas may have to adjust some personal expenses, she did not demonstrate an inability to pay her attorney's fees.

¶26. Also, even when considering the discovery dispute, the chancellor's denial of attorney's fees is not an abuse of discretion. Both Thomas and Crews admit in their briefs that they—to some extent—resolved a portion of their discovery dispute the morning of the hearing on the motion to compel discovery. Additionally, Thomas waited until thirty-two days before the hearing on the petition to modify to provide her own 8.05 disclosure statement to Crews. Because Thomas is able to pay and the discovery dispute does not merit awarding attorney's fees, we affirm the chancellor's decision to deny Crews's and Thomas's requests for attorney's fees.

## CONCLUSION

¶27. Because the chancellor's findings are supported by substantial credible evidence in the record and are not an abuse of discretion, we affirm the chancery court's order modifying the child-support and child-custody agreement. We also hold that the chancellor did not abuse his discretion in denying attorney's fees.

¶28. **THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**

10